**BROWN SUPPLY COMPANY, a corporation, Plaintiff,**

**v.**

**J. C. PENNEY COMPANY et al., Defendants-Respondents,**

**Graybar Electric Company, Inc., a corporation, Defendant-Appellant,**

**Gamp Electric Company, Inc., Ramon J. Morganstern, Successor-Assignee for Benefit of Creditors of Gamp Electric Company, Defendant.**

**No. 34990.**

Missouri Court of Appeals, St. Louis District, Division One.

Jan. 29, 1974.

Forgey & Sindel, William F. Sindel, St. Louis, for defendant-appellant.

Leyhe, Jacobsmeyer & Meyer, R. W. Jacobsmeyer, Clayton, for Gamp Electric Co., Inc.

KELLY, Judge.

This appeal is from the dismissal of a cross-bill filed by the appellant, Graybar Electric Company, seeking a judgment against the Gamp Electric Company, Inc., in the sum of $15,422.55 plus interest at the rate of 6% per annum from April 22, 1966, and further praying that said judgment be adjudged a mechanic's lien, superi-

or to certain described deeds of trust and other mechanic lien claims on certain described realty, buildings and improvements owned by named parties who were also co-defendants in the parent suit filed by the plaintiff, Brown Supply Company.

The Points on appeal are, 1) whether appellant's appeal is timely and, 2) did appellant comply with the requirement for perfecting a mechanic's lien, including those requirements for service of process? We conclude that the appeal was timely filed and that the appellant did comply with the statutory requirements for a mechanic's lien, that he did satisfy the requirement for service of process under the facts in this suit and therefore reverse and remand.

The facts of the case are: plaintiff, Brown Supply Company, on December 20, 1966, commenced this suit in equity against the following defendants: J. C. Penney Co., Millstone Construction Co., Inc., Gamp Electric Company, First National Bank in St. Louis, Graybar Electric Company, Louis I. Zorensky and Mary G. Zorensky, Milton R. Zorensky and Doris Jean Zorensky, Saul Brodsky and Charlotte Brodsky, seeking a money judgment in the sum of $540.16, plus interest, for certain material furnished by the plaintiff to a sub-contractor, Gamp Electric Company, as well as for material and labor furnished by the plaintiff in the construction of a building by the J. C. Penney Company, on land owned by the Zorenskys and Brodskys, more commonly known as the Northwest Plaza Shopping Center, 11,100 St. Charles Rock Road, St. Louis County, Missouri. Plaintiff further sought a mechanic's lien in the amount of the money judgment against the realty, and prayed the court to declare that plaintiff's lien was superior to any other claims other claimants might have against the aforesaid realty. Plaintiff further alleged that one of the claimants, the appellant here, had previously filed a suit at law seeking to impress a mechanic's lien against the same land arising out of work performed or materials furnished in the construction thereof, and prayed that the court enjoin the prosecution of said suit at law pending the establishment of the equities between the lien claimants.

The Zorenskys and Brodskys were the owners of the parcel of land here in question, each owning an undivided one-third interest. On or about January 26, 1965, the Zorenskys and Brodskys, hereinafter referred to as "the owners", entered into a contract with Millstone Construction Company as general contractor, Gamp Electric Company as electrical sub-contractor, and J. C. Penney Company as lessee for the purpose of installing certain electrical materials and supplies in a building being constructed for the lessee, J. C. Penney Company on land belonging to the "owners." Thereafter, Gamp Electric Company purchased from plaintiff certain electrical materials required in the construction contract and performed its part of the contract. Plaintiff also, it was alleged, performed certain work and furnished certain materials for the construction and erection of the aforesaid buildings. Plaintiff furnished the materials to the sub-contractor, Gamp Electric Company, on the "faith and credit of said real estate, building and improvements, and plaintiff's lien against the same." Plaintiff commenced the furnishing of the electrical materials and building supplies on January 12, 1966, and furnished the last items on February 23, 1966. On June 9, 1966, at least 10 days prior to filing its mechanic's lien, plaintiff gave notice in writing of its claim against the real estate and the improvements thereon, the amount of the claim, the names of the debtors and its intention to file a mechanic's lien therefor to the owners, deed of trust holders and the lessee. On June 20, 1966, plaintiff filed its claim for mechanic's lien in the office of the Clerk of the Circuit Court of St. Louis County, Missouri, same being No. 17387. The following claim some interest in the property and improvements: Graybar Electric Company under mechanic's lien No. 17387, filed June 20, 1966; J. C. Penney Company, Ramon

Morganstern, successor-assignee for Benefit of Creditors of Gamp Electric Company, Malcolm W. Martin as Trustee, First National Bank in St. Louis, and Millstone Construction Company, the general contractor.

Graybar Electric Company, on August 6, 1966, had filed suit in the Circuit Court of St. Louis County to enforce its mechanic's lien and joined therein as defendants, the owners of the realty and Gamp Electric Company. Plaintiff filed the current suit on December 20, 1966, and on December 27, 1966, summons was delivered to the Sheriffs of both St. Louis County and the City of St. Louis. On January 13, 1967, appellant filed its answer and cross-bill and mailed copies of same to the co-defendants in the Brown suit, with a certification to that effect on the same date. On February 18, 1967, defendants, J. C. Penney Company, the "owners," Malcolm W. Martin, Trustee, First National Bank in St. Louis, and Millstone Construction Company, filed a motion to quash service of appellant's cross-bill, and on October 17, 1967, said motion to quash service was sustained on the grounds that such service of the cross-bill was defective. On October 31, 1967, appellant ordered summons to issue on the cross-bill for those defendants whose motion to quash had been sustained and said summons were returned executed by the Sheriff of the City of St. Louis on November 14, 1967, and by the Sheriff of St. Louis County on November 16, 1967. On November 28, 1967, the aforesaid co-defendants filed a motion to quash the service of summons and to dismiss appellant's cross-bill as to said defendants. On December 20, 1967, appellant propounded interrogatories to the "owners," Malcolm W. Martin, Trustee, First National Bank in St. Louis, Millstone Construction Company and J. C. Penney Company, inquiring whether on or about January 13, 1967, the defendants received through the mail a copy of the separate answer and cross-bill of the appellant; whether a copy of the pleading was delivered and forwarded to

anyone else; whether, if so, that person explained the contents of the document to them, and if at the time the cross-bill was received they were represented by an attorney. On December 28, 1967, these same defendants filed a Motion to Quash Service of Interrogatories on the grounds that the service was "attempted by delivering a copy to Leyhe, Jacobsmeyer and Meyer, Attorneys for Defendants. That the record in this case indicates said Attorneys have appeared only specially in this matter and by prior Motion and have not consented to the jurisdiction of said Defendants in this cause." On January 30, 1968, the motion to quash service and dismiss appellant's cross-bill was argued and sustained as to the "owners," Malcolm W. Martin, Trustee, First National Bank in St. Louis, Millstone Construction Company and J. C. Penney Company, and the court order reads that said cross-bill as to said defendants "to be dismissed on Feb. 15, 1968, unless prohibited by proper appellate court. Motion to quash service of interrogatories of deft. Graybar Electric Co. argued and sustained." On February 15, 1968, the court ordered the cross-bill dismissed as to the aforesaid defendants. On October 4, 1972, plaintiff by leave of court, dismissed its petition with prejudice. On November 3, 1972, appellant filed a Motion for Appeal which was sustained and on the same date appellant filed its Notice of Appeal to this Court.

■■■ Was appellant's appeal timely? We hold that it was. Rule 82.05 provides that an aggrieved party may file notice of appeal any time within thirty (30) days after entry of judgment. Notice of appeal was filed in this case on November 3, 1972, which was within the prescribed time. Respondent argues that appellant should have filed its notice of appeal within thirty days after the order dismissing its cross-bill, i. e., within thirty days after February 15, 1968. We disagree. To be final and appealable, an order must contain all the essentials of a judgment. State ex rel. Fletcher v. New Amsterdam Casualty Co.,

430 S.W.2d 642, 645 [4, 5] (Mo.App.1968). Rule 74.01 V.A.M.R., defines "Judgment" as "the final determination of the rights of the parties in the action." Sec. 511.010, RSMo 1969, V.A.M.S.[1] To be a final judgment, the order must dispose of all the parties and all the issues in the case, leaving nothing for future determination, unless the trial court has ordered a separate trial of any issue or has specifically designated that a particular order is final for the purposes of appeal. Rule 82.06; Sec. 512.020; Johnson v. Great Heritage Life Insurance Company, 490 S.W.2d 686, 688 [1] (Mo.1973). If an order dismisses the proceedings or finally disposes of the cause, it is a final order. State ex rel. Fletcher v. New Amsterdam Casualty Co., *supra*; 4 C.J.S. Appeal and Error § 94 (1957).

█ A cross-bill is "a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, *touching the matters in question in the original bill*." Fulton v. Fisher, 239 Mo. 116, 143 S.W. 438, 442 [2] (1912). (Emphasis added).

█ "A cross-bill in equity pleading is a matter of defense to the original bill, or an auxiliary suit by a defendant against the plaintiff or against other defendants, either to afford the cross-pleader a more adequate defense to the original bill than a mere answer would give, or to afford him affirmative relief concerning the same matter covered by the original bill." Fulton v. Fisher, *supra*, 143 S.W. l. c. 442 [2]. The courts of this state have consistently held that an appeal from an order which dismisses a cross-claim or a counter-claim, but which does not dispose of plaintiff's petition is premature. State ex rel. State Highway Commission v. Hammel, 290 S. W.2d 113, 117 [4] (Mo.1956); Sullivan v. Sparks, 318 S.W.2d 203 (Mo.App.1958).

█ An order dismissing a cross-bill, like an order dismissing a cross-claim or counter-claim, is a final disposition of the issues involved in the cross-claim or the counter-claim; it is not, however, an adjudication of all the issues involved in the plaintiff's petition and therefore cannot be said to constitute a final, appealable order. To hold otherwise would be to encourage "piecemeal" appeals and defeat the purpose of the Rule and Statute. Had appellant attempted to perfect an appeal from the order of February 15, 1968, dismissing its cross-bill, the appeal would have been premature. An order quashing purported service of process does not constitute a final judgment from which an appeal will lie, Color Process Co. v. Northwest Screenprint Co., 417 S.W.2d 934, 936 (Mo. 1967), and appellant's first opportunity to appeal came when plaintiff's petition was dismissed by the trial court. Appellant took its appeal within the thirty day period prescribed by Rule and Statute and it is therefore timely taken. We rule this Point against the respondents.

Respondents rely on Kinnear Manufacturing Company v. Myers, 452 S.W.2d 599 (Mo.App.1970). We note that in Kinnear the appeal was concerned with summary judgments entered by the trial judge which, l. c. 600 "As authorized by Civil Rule 82.06, V.A.M.R., the court *specifically designated such judgments to be final judgments for the purpose of appeal within the meaning of § 512.010, RSMo 1959, V. A.M.S.* . . ." (Emphasis supplied). Such was not the case here. Nor was this claim a separate and independent claim unrelated to any other claim stated or joined in the case; the very purpose of the equitable lien statute is to bring in all of the lienors so that the claims may be adjudicated, determined and enforced in one action whereby the proceeds may be marshalled and distributed among the parties according to their respective legal and equitable rights.

The Second Point is twofold. First, whether the trial court erred in quashing service of summons, where appellant

---

1. All statutory references are to RSMo 1969, unless otherwise indicated.

mailed copies of its answer and cross-bill to the respondents rather than have service of process effected by the Sheriff; Second, whether the trial judge erred in quashing service of summons by the Sheriffs of the City of St. Louis and St. Louis County on the respondents as evidenced by their respective returns of November 14, 1967, and November 16, 1967, and in dismissing appellant's cross-bill.

The orders quashing service in each instance are silent as to the basis for such action; the same is true with respect to the order dismissing appellant's cross-bill. The parties to this appeal, however, agree that the basis for the quashing of service in the first instance was the failure of the appellant to obtain service by process served by the Sheriffs, and in lieu thereof obtain service by mail on the defendants. They both also agree that the order quashing the service of November 14, 1967, and November 17, 1967, was based upon the finding of the trial judge that the appellant had failed to commence his action in time, and the statute therefore barred it from proceeding further.

The first issue was resolved in Peerless Supply Co. v. Industrial Plumbing and Heating Co., 460 S.W.2d 651, 660 [4] (Mo.1970), when the Supreme Court said:

" . . . Sec. 429.170, V.A.M.S., requires that a mechanic's lien action shall be commenced within six months after the filing of the lien. The manner of 'commencing suit' is provided for in Civil Rule 53.01, V.A.M.R., which states:

' . . . The filing of a petition *and* suing out of process therein shall be deemed the commencement of a civil action.' (Emphasis added). However, a completely separate provision is made in the equitable mechanic's lien suits as to cross-claimants by Sec. 429.310, V.A.M.S. (Civil Rule 101.15, V.A.M.R.). It is there provided that:

' . . . Any answer, or other pleading . . . filed or made in any such equi-

table action by any mechanic's lien claimant, within six months after the preliminary statement for the lien of such claimant has been filed . . . shall be deemed a commencement of an action by such mechanic's lien claimant.' This section constitutes the limitation statute for cross-claimants in equitable mechanic's lien actions and it expressly omits the requirement for 'suing out of process'.

·   ·   ·   ·   ·   ·

' . . . [T]he rule is that *no process is necessary to bring in any party to the original bill,* the cross bill being regarded as an adjunct to the original suit, and the whole together as constituting but one case . . . ' 30A C.J.S. Equity § 172d, p. 162. (Emphasis added). Peerless Supply Co. v. Industrial Plumbing & Heating Co., *supra* 460 S.W.2d at 660 [4–6].

This ruling was reaffirmed in Drilling Service Co. v. Baebler, 484 S.W.2d 1, 13 [9] (Mo.1972) when the court said:

" . . . [I]n an equitable mechanic's lien action, the provisions of § 429.310 are controlling and do not require cross claimant to obtain service of process upon a defendant against whom cross claimant seeks relief if cross claimant does not seek new or different relief as to that defendant from that relief sought by plaintiff."

■ Here, as in both Peerless and Drilling Service, the original equitable mechanic's lien suit was properly instituted by the plaintiff and service was obtained on all the necessary parties. This being so, it was unnecessary for appellant to sue out process on its cross-bill when it "commenced its action: by filing its answer and cross-bill to the plaintiff's petition. This was accomplished within less than six months after appellant had filed its lien on August 6, 1966, clearly within the statutory period. Sec. 429.310.

Respondents contend that appellant was seeking new or additional relief in its cross-bill and therefore service by mail was inappropriate. Under similar circumstances the Court in Peerless and Drilling Service, *supra,* found no claim for new or additional relief, and we find none here. The court in Drilling Service, *supra,* 484 S.W.2d 1. c. 14 [10], said:

" . . . It is clear that the relief sought by cross claimants as to Prudential and Franchi was the same as the relief sought by plaintiff against Prudential and Franchi, to wit: a mechanics lien against the fee title of all of the described property and all improvements thereon. Priorities as between mechanics liens would constitute issues between the mechanics lien claimants but not between mechanics liens claimants and Prudential or Franchi."

We hold that the trial court erred in quashing the service of appellant's cross-bill by mail on the respondents since no separate service of process was required. We likewise hold the trial court erred in dismissing appellant's cross-bill as having been untimely commenced since appellant commenced its action by the filing of its answer and cross-bill and serving a copy thereof on the defendants by mail within less than the six months required by law.

The cause is therefore reversed and remanded for proceeding not inconsistent with this opinion.

SIMEONE and WEIER, JJ., concur.